UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
Case No.: 8:08-cv-01910 JSM/TGW

JOSE GONZALEZ and
ALLEGRA VIAMONTE,

                **Plaintiffs,**

vs.

COOPERATIVA DE SEGUROS
MULTIPLES DE PUERTO RICO, INC.,

                **Defendant.**
_____/

## PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE OPINIONS AND TESTIMONY OF SAM B. UPCHURCH, Ph.D., P.G. AND MEMORANDUM IN SUPPORT THEREOF

Plaintiffs, JOSE GONZALEZ and ALLEGRA VIAMONTE ("Plaintiffs), by and through their undersigned counsel, and move this Honorable Court to exclude portions of the opinions and testimony of Sam B. Upchurch, Ph.D., P.G. As grounds therefore, Plaintiffs would show as follows:

1. On or about August 11, 2007, Plaintiffs' allege their Insured Property was damaged by sinkhole activity and they reported their insurance claim.

2. In response to their insurance claim, COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO, INC. ("COOPERATIVA") retained the services of SDII Global Corporation ("SDII") to perform a subsidence investigation to determine the cause of the damage to The Insured Property.

3. SDII prepared a written report of its findings and conclusions of its subsidence investigation of The Insured Property based on the above testing, and issued a report dated January 16, 2008 (see attached Exhibit "A"). In its report, SDII stated:

>It is SDII's professional opinion that sinkhole activity as defined by §627.706 Florida Statutes does not exist at the Gonzalez residence. Furthermore, based on the data presented herein, it is SDII's professional opinion within reasonable probability that a sinkhole loss, as described by §627.706, has not occurred at the Gonzalez residence.

4. SDII conducted the following testing of the insured property:

- A Ground Penetrating Radar Survey;
- One test pit excavated;
- Hand auger borings and push penetrometer soundings;
- Standard Penetration Test (SPT) borings;
- Laboratory testing of soils;
- Relative floor elevation contour mapping;
- A structural assessment

5. Plaintiffs subsequently retained the services of BASIC (Bay Area Sinkhole Investigation & Civil Engineering), a geotechnical company, to conduct a subsurface investigation.

6. BASIC prepared a written report of its findings and conclusions of its subsidence investigation based upon the above testing (attached as Exhibit "B"). In its July 28, 2008, report, BASIC concluded that:

>It is our opinion that sinkhole activity cannot be eliminated within a professional probability at the Gonzalez/Allegra residence and may be causing some of the distress.

7. BASIC conducted the following testing of the insured property:

- A Ground Penetrating Radar Survey;
- Three (3) test pits excavated;
- Three (3) hand auger borings;
- Three (3) Standard Penetration Tests (SPT) borings;
- Relative floor elevation contour mapping.

8. Despite COOPERATIVA'S denial of Plaintiffs' insurance claim, sinkhole activity does exist beneath Plaintiffs' property as evidenced by BASIC'S testing and findings. On August 18, 2008, Plaintiffs filed their Complaint for Breach of Contract against COOPERATIVA for improperly denying their sinkhole claim.

9. Sam B. Upchurch, Ph.D., P.G., is a geologist employed by SDII Global Corporation, who was retained by the Defendant in this matter. Some of the opinions of Dr. Upchurch are inadmissible under the *Daubert* standards because they are based on his opinions which have not been subjected to peer review and publication, and have not attained general acceptance in the scientific community, but are merely Dr. Upchurch's "rule of thumb".

10. Dr. Upchurch opined in his March 24, 2009, Addendum Report – Response to BASIC Subsidence Investigation (attached as Exhibit "C"), that one should never advance an Standard Penetration Test ("SPT") borings within at least five feet of a previous boring. Dr. Upchurch further states that such opinion is a **"well-known principle"** (See Exhibit "C", page 3) (Emphasis added).

10. During his April 2, 2009, deposition, Dr. Upchurch then testified that the five-foot distance was a "**rule of thumb**" (see attached Composite Exhibit "D", Page 142, Line 23- Page 143, Line 5; and Page 179, Line 1 to Page 180, Line 4) (Emphasis added).

11. Dr. Upchurch admitted that the five-foot distance was not in the ASTM [American Society for Testing and Materials] Standard (see Exhibit "D", Page 143, Lines 8-16).

12. Additionally, Dr. Upchurch testified that he did not know of any authoritative text, authoritative treatise, any authoritative paper, or standard that says SPT borings must be five feet apart (see Exhibit "D", Page 144, Lines 2-11).

13. In his August 31, 2009, deposition, Dr. Upchurch testified that he has never authored any articles, authoritative text, treatise, or opinion paper, stating that SPT borings should be five feet apart (see attached Exhibit "E", Page 106, Lines 1-7).

14. Additionally, Dr. Upchurch testified that following his April 2, 2009, deposition in this matter, he did not attempt to locate any articles regarding the five-foot SPT distance (see Exhibit "E", Page 106, Lines 8-17).

15. In his August 7, 2009, supplemental report, Dr. Upchurch then calls the five-foot distance "**common sense**" (see attached Exhibit "F", Page 4, ¶ 7)(Emphasis added).

16. Dr. Upchurch conceded in his August 7, 2009, report that "one may obtain valid data from SPT boring[s] closer than 5 feet" (see Exhibit "F", Page 4).

17. Plaintiffs request the Court find the following opinions cited by Dr. Upchurch as inadmissible, based upon his five-foot rule opinion, which does not meet the *Daubert* standard:

   a. BASIC's SPT boring placement was incorrect, which biases much of BASIC's data (see Exhibit "C", Page 2);

   b. BASIC violated this "well-known principle" (see Exhibit "C", Page 3);

   c. BASIC's B-1 and B-2 are unreliable, and they do not rise to the standards of scientific and engineering quality (see Exhibit "C", Page 3);

   d. Two of the three SPT borings advanced by BASIC may be compromised because they were placed too close to SPT borings previously advanced by SDII. Placing these borings so close is bad practice and should not be attempted (see Exhibit "C", Page 5).

**MEMORANDUM OF LAW**

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S. Cit. 2786 (1993). The trial court must act as a "gatekeeper" to exclude "junk science" that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147-48, 119 S.Ct. 1167 (1999); *GE v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512 (1997); *Daubert,* 509 U.S. at 589090, 592-93. As the Supreme Court emphasized, however, "the inquiry envisioned by Rule 702 is …a flexible one," *Daubert,* 509 U.S. at 594, and must be "tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150.

The Court must determine that expert testimony is scientifically reliable under Rule 702 F.R.E.. In *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786, the Supreme Court listed four noninclusive factors that courts should consider in determining reliability under Rule 702. The *Daubert* factors are (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance in the scientific community.

The leading case in the Eleventh Circuit applying *Daubert* is *Joiner v. General Electric Co.,* 78 F. 3d 524 (1996), where the court stated:

> The admission of scientific evidence that might not yet be generally accepted in the field, however, is contingent on a trial court's finding that such evidence is indeed scientifically legitimate, and not "junk science" or mere speculation. This gatekeeping role is simply to guard the jury from considering as

> proof pure speculation presented in the guise of legitimate scientifically-based expert opinion. It is not intended to turn judges into jurors or surrogate scientists.
>
> Thus, the gatekeeping responsibility of the trial courts is not to weigh or choose between conflicting scientific opinions, or to analyze and study the science in the question in order to reach its own scientific conclusions from the material in the field. Rather, **it is to assure that an expert's opinions are based on relevant scientific methods, processes, and data, and not on mere speculation and that they apply to the fact is issue.**

Here, Dr. Upchurch's opinion regarding the five-foot distance for SPT borings as cited in his report and which he relied upon to dispute BASIC'S findings, are inadmissible because it is has not been subjected to peer review and publication and has not attained general acceptance in the scientific community.

## A. Peer Review and Publication

Dr. Upchurch testified in his April 2, 2009, deposition that the five-foot distance was not in the ASTM [American Society for Testing and Materials] Standard (see Exhibit "D", Page 143, Lines 8-16). Additionally, Dr. Upchurch testified that he did not know of any authoritative text, authoritative treatise, any authoritative paper, or standard that says SPT borings must be five feet apart (see Exhibit "D", Page 144, Lines 2-11).

Further, in his August 31, 2009, deposition, Dr. Upchurch testified that he has never authored any articles, authoritative text, treatise, or opinion paper, stating that SPT borings should be five feet apart (see attached Exhibit "E", Page 106, Lines 1-7). Additionally, Dr. Upchurch testified that following his April 2, 2009, deposition in this matter, he did not attempt to locate any articles regarding the five-foot SPT distance (see Exhibit "E", Page 106, Lines 8-17).

Plaintiffs' expert, Dhirenda S. Saxena, stated in his June 25, 2009, Additional Exploration, and Forensic Geotechnical Engineering Consultation Service Report that in his 40-year career, he had not encountered any such boring distance requirement, and is unaware of any such rule/law and/or "well-known" principle (see attached Exhibit "G", Page 7, ¶3).

Neither Dr. Upchurch nor Defendant have presented any peer reviews or publications to support Dr. Upchurch's opinions regarding the five-foot distance for SPT borings, and therefore, this *Daubert* standard has not been met.

**B.** **General Acceptance in the Scientific Community**

Dr. Upchurch admitted that the five-foot distance was not in the ASTM [American Society for Testing and Materials] Standard (see Exhibit "D", Page 143, Lines 8-16).

Even Dr. Upchurch changed his statements regarding the five-foot distance from a "well-known principle" to a "rule of thumb" to "common sense" (see Exhibit "C", page 3; Composite Exhibit "D", Page 142, Line 23- Page 143, Line 5; and Page 179, Line 1 to Page 180, Line 4; and Exhibit "F", Page 4, ¶ 7).

Dr. Upchurch also conceded in his August 7, 2009, report that "one may obtain valid data from SPT boring[s] closer than 5 feet" (see Exhibit "F", Page 4). Further, Plaintiffs' expert, Dhirenda S. Saxena, stated that in his 40-year career, he had not encountered any such boring distance requirement, and is unaware of any such rule/law and/or "well-known" principle (see attached Exhibit "G", Page 7, ¶3).

Neither Dr. Upchurch nor Defendant can provide any evidence that Dr. Upchurch's five-foot distance has attained general acceptance in the scientific community, and therefore, this *Daubert* standard has not been met.

**WHEREFORE**, the Plaintiffs, JOSE GONZALEZ and ALLEGRA VIAMONTE, respectfully request that this honorable Court grant Plaintiffs' Motion to Exclude Portions of the opinions and testimony of Sam Upchurch because it fails to meet the *Daubert* standards as outlined in Paragraph 10 (a) through (d) , and for such further relief as the Court deems appropriate under the circumstances.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of September, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: David R. Terry, Esquire, 1760 Fennell Street, Maitland, FL 32751.

DANAHY & MURRAY, P.A.

s/David C. Murray_____
DAVID C. MURRAY, ESQUIRE
Florida Bar No. 542121
901 W. Swann Avenue
Tampa, FL 33606
(813) 258-3600
(813) 258-3321 (fax)
Attorneys for Plaintiffs