# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JOSE GONZALEZ and ALLEGRA VIAMONTE,**

    Plaintiffs,

v.                                             Case No. 8:08-cv-1910-T-30TGW

**COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO, INC.,**

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion to Exclude Portions of the Opinions and Testimony of Sam B. Upchurch and Memorandum in Support Thereof (Dkt. 49), Defendant's Response to same (Dkt. 50), Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 48), and Plaintiffs' Response to same (Dkt. 51). The Court having considered the motions, responses, record evidence, and being otherwise advised in the premises, concludes that Plaintiffs' Motion to Exclude Portions of the Opinions and Testimony of Sam B. Upchurch (Dkt. 49) and Defendant's Motion for Summary Judgment (Dkt. 48) are denied.

## BACKGROUND

This is an action for damages for breach of an insurance contract. The parties dispute whether the Insured Property was damaged by sinkhole activity. Specifically, Defendant, Cooperativa De Seguros Multiples De Puerto Rico, Inc. ("Defendant") issued an insurance

policy, Policy Number HO-0022194 (the "Policy") to Plaintiffs Jose Gonzalez and Allegra Viamonte ("Plaintiffs"). The Policy covers "physical damage" to the "Insured Property" resulting from "Sinkhole activity" during the "policy period." (Dkt. 6-2). The Policy defines "Sinkhole Activity" as the settlement or systematic weakening of the earth supporting such property. Id. The settlement or systematic weakening must result from movement or raveling of soils, sediments, or rock material into subterranean voids created by the effect of water on limestone or similar rock formations. Id. The Policy defines "Sinkhole Loss" as "actual physical damage: (a) arising out of, or (b) caused by, sinkhole activity." Id.

On or about August 11, 2007, Plaintiffs' Insured Property suffered damage. Plaintiffs submitted their claim to Defendant for damage to the Insured Property resulting from sinkhole activity. Defendant then retained SDII Global Corporation ("SDII") to perform a subsidence investigation to determine the causes of the reported distress of the Insured Property. After its investigation, SDII concluded that the cause of the damage was not related to sinkhole activity[1]. SDII issued a report dated January 16, 2008, which summarized its findings and conclusions of its subsidence investigation of the Insured Property. Defendant adopted the opinions of SDII and issued a letter on January 22, 2008, notifying Plaintiffs that coverage was not available for their claim based on SDII's investigation and conclusion that the damage was not related to sinkhole activity.

---

[1] Specifically, SDII found that the damage to the Insured Property was the result of shallow loose soils across the site, which was subject to the Policy's "Earth Movement" exclusion. (Dkt. 2-3).

Plaintiffs retained the services of Bay Area Sinkhole Investigation & Civil Engineering ("B.A.S.I.C."), a geotechnical company, to conduct a subsurface investigation of the Insured Property. B.A.S.I.C. concluded that sinkhole activity did exist within a professional probability at Plaintiffs' residence and that the sinkhole activity was causing distress to the Insured Property. Specifically, David Hewitt ("Hewitt"), a professional geologist employed by B.A.S.I.C., opined that sinkhole activity exists at the Insured Property and is causing damages to the Insured Property. Justin James ("James"), an engineer employed by B.A.S.I.C., also opined that sinkhole activity exists within a professional probability at the Insured Property, and that it is causing some of the damage as documented in his report.

Plaintiffs also retained the services of ASC Geosciences, Inc. ("ASC") to perform a forensic geotechnical engineering assignment consisting of evaluating the available reports and performing additional exploration, sampling, testing, data evaluation, and engineering consultation services for the Insured Property. Dhirenda Saxena ("Saxena") of ASC determined that sinkhole-related conditions are occurring at the site and that the Insured Property appears to be underlain by sinkhole-related activity.

At the conclusion of discovery in this case, Plaintiffs filed a Motion to Exclude portions of Sam B. Upchurch's ("Upchurch") opinion. Upchurch is a geologist employed by SDII. Plaintiffs argue that Upchurch's "five-foot rule opinion" does not meet the Daubert standard. As set forth herein, the Court concludes that Plaintiffs' arguments are more

appropriate for cross-examination and that Upchurch's "five-foot rule opinion" should not be excluded.

Defendant filed a Motion for Summary Judgment, arguing that Plaintiffs' experts failed to provide the necessary evidence to substantiate that the subject property suffered a sinkhole loss. The Court concludes that the record demonstrates material disputed facts regarding whether the Insured Property was damaged by a sinkhole.

## DISCUSSION

### I. Plaintiffs' Motion to Exclude Upchurch's "Five-Foot Rule Opinion"

Plaintiffs' Motion to Exclude argues that Upchurch's "five-foot rule opinion" is inadmissible under Daubert, because it is based on opinion that has not been subjected to peer review and publication, and has not attained general acceptance in the scientific community, but is merely Upchurch's "rule of thumb."

Upchurch is a geologist employed by SDII. In Upchurch's March 24, 2009 Addendum Report, which was a response to B.A.S.I.C.'s investigation, Upchurch stated that Standard Penetration Test ("SPT") borings should not be placed within at least five feet of a previous boring. During deposition testimony, Upchurch stated that the five-foot distance was a "rule of thumb" and "common sense" that he learned in graduate school in the 1960s. Upchurch admitted that he has not authored any articles, authoritative texts, treatises, or opinion papers stating that SPT borings should be five feet apart. However, Upchurch advised that this was the only situation that he knew of in which borings were not kept as far away from each other as possible in a sinkhole investigation.

Plaintiffs request that the Court find the following opinions cited by Upchurch inadmissible:

a. B.A.S.I.C.'s SPT boring placement was incorrect, which biases much of B.A.S.I.C.'s data;

b. B.A.S.I.C. violated this "well-known principle";

c. B.A.S.I.C.'s B-1 and B-2 [borings] are unreliable, and they do not rise to the standards of scientific and engineering quality; and

d. Two of the three SPT borings advanced by B.A.S.I.C. may be compromised because they were placed too close to SPT borings previously advanced by SDII. Placing these borings so close is bad practice and should not be attempted.

In response, Defendant argues that Daubert does not apply, because Plaintiffs "have simply challenged only one of the opinions [Upchurch] included in his report." Defendant also argues that, even if Daubert does apply, Plaintiffs' arguments go to the weight of the evidence that Upchurch provides and is subject to Plaintiffs' cross-examination. Defendant also points out that Plaintiffs' own expert, James, testified that he would have minimum spacing of two to three feet between SPT borings to avoid "communication" between the borings. James also testified that he was unaware of any ASTM (American Society for Testing and Materials) standard regarding this minimum spacing, but learned this "more [as] a practice of drilling a lot of holes in the ground." Thus, Defendant contends that James, like Upchurch, implied that borings that fall within this minimum spacing can create "false data."

James, like Upchurch, was also unaware of any authority that addresses the spacing of SPT borings in relation to each other.

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (citations omitted). District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.

Importantly, although rulings on admissibility under Daubert inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the

proffered evidence. Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). Indeed, a district court's gatekeeper role is not intended to supplant the adversary system or the role of the jury. Id. Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Id. The "overarching" goal of Daubert's gatekeeping requirement is simply to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Plaintiffs challenge only a small portion of Upchurch's reports and testimony regarding his opinion that the minimum distance between any two SPT borings is five feet. Plaintiffs argue that Upchurch's opinion on this issue does not meet the "reliability" factor under Rule 702.[2] The Supreme Court has provided four guiding factors that a district court may consider in assessing the reliability of expert testimony: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the

---

[2] Plaintiffs do not challenge Upchurch's qualifications or the relevancy of Upchurch's opinions.

methodology; and (4) whether the technique has been generally accepted in the proper scientific community." McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing Daubert, 509 U.S. at 595). These factors do not constitute a strict checklist, but are meant to be helpful to the court. Kuhmo Tire Co., 526 U.S. at 151. Plaintiffs challenge Upchurch's opinion under only factors 2 and 4, i.e., that his opinion regarding the placement of SPT borings has not been subjected to peer review and publication, and is not generally accepted in the proper scientific community.

The Court concludes that Plaintiffs have not met their burden to exclude Upchurch's "five-foot rule opinion" under Daubert. Although a district court certainly may exclude portions of an expert's testimony that fail to satisfy Daubert, yet still conclude that an expert may testify and opine on other matters, see City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 563 (11th Cir. 1998), Plaintiffs' arguments do not establish that Upchurch's opinion is unreliable and do not warrant its exclusion. Plaintiffs' own expert, James, appears familiar with and even agrees with Upchurch's opinion to the extent that some spacing should exist between borings to minimize the risk of creating false data. Given that point, it is difficult for Plaintiffs to show that Upchurch's criticism of B.A.S.I.C.'s method is an expert opinion that lacks reliability. Although Plaintiffs may disagree with Upchurch's conclusion regarding a five-foot minimum, that is not the court's concern at this juncture under Daubert. This issue is better addressed on cross-examination and the weight to be afforded that portion of Upchurch's testimony should be left to the fact finder.

Accordingly, Plaintiffs' Motion to Exclude Portions of the Opinions and Testimony of Upchurch is denied.

## II. Defendant's Motion for Summary Judgment

### A. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**B.   Legal Analysis**

Defendant moved for summary judgment, relying on SDII's expert opinion that the damage to the Insured Property was not caused by sinkhole activity. Plaintiffs, however, have presented a genuine issue of material fact by proffering their experts' opinions that the damage was, in fact, caused by sinkhole activity. Dzafic v. Geovera Specialty Ins. Co., 2008 WL 5429887 (M.D. Fla. Oct. 2, 2008). Moreover, Defendant has overlooked the terms of the Policy and has instead relied exclusively on Fla. Stat. § 627.706[3] to argue that Plaintiffs

---

[3] Fla. Stat. § 627.706 requires that every insurer in the state shall make available coverage for insurable sinkhole losses. See Warth v. State Farm Fire and Cas. Co., 695 So. 2d 906, 907 (Fla. 2d DCA 1997).

must prove that any sinkhole activity caused "structural damage." The Policy does not require "structural damage" to the Insured Property and Florida law is clear that an insurer may provide more coverage than is statutorily required. Green v. Life & Health of Am., 704 So. 2d 1386 (Fla. 1998); Carguillo v. State Farm Mut. Auto. Ins. Co., 529 So. 2d 276 (Fla. 1988); State Farm Florida Ins. Co. v. Nichols, 2009 WL 3674569 (Fla. 5th DCA Nov. 6, 2009).

Accordingly, Defendant's Motion for Summary Judgment is denied.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiffs' Motion to Exclude Portions of the Opinions and Testimony of Sam B. Upchurch and Memorandum in Support Thereof (Dkt. 49) is hereby DENIED.

2. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 48) is hereby DENIED.

**DONE** and **ORDERED** in Tampa, Florida on November 10, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-1910.msjandexpert.frm